**Janice NYFLOT, Respondent,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Petitioner.**

No. C5-84-2030.

Supreme Court of Minnesota.

June 11, 1985.

Rehearing Denied July 11, 1985.

---

Hubert H. Humphrey, III, Atty. Gen., Thomas L. Fabel, Jerry Anderson, Joel A. Watne, Asst. Attys. Gen., St. Paul, for petitioner.

Samuel A. McCloud, Brian D. Roverud, Dean S. Grau, William Alan Lanoue, Minneapolis, for respondent.

AMDAHL, Chief Justice.

In *Nyflot v. Commissioner of Public Safety*, 365 N.W.2d 266 (Minn.App.1985), the Court of Appeals reversed an order of the trial court sustaining the revocation of Janice Nyflot's driver's license for refusal to submit to chemical testing under Minn. Stat. § 169.123 (1984), the implied consent law. The Court of Appeals ruled that drivers arrested for DWI have a limited right under Minn.Stat. § 481.10 (1984) to consult with an attorney before deciding whether to submit to chemical testing, notwithstanding a 1984 amendment to section 169.-123 signifying a legislative intent to take away that right. We granted the commissioner's petition for review. Holding that a driver arrested for DWI has no right, statutory or constitutional, to consult with counsel before deciding whether to submit to chemical testing, we reverse the Court of Appeals and reinstate the decision of the trial court.[1]

On September 23, 1984, Nyflot was lawfully arrested by sheriff's deputies for DWI and was taken to the law enforcement center in Albert Lea. There the deputies read her the implied consent advisory set forth in section 169.123. Specifically, she was told (a) that Minnesota law required her to take a test to determine if she was under the influence of alcohol or a con-

1. The motion to strike an affidavit from the supplementary brief of the Commissioner of Public Safety is denied.

trolled substance; (b) that if she refused, her right to drive would be revoked for a minimum of 1 year; (c) that if she took a test and the results indicated that she was under the influence of alcohol or a controlled substance, she would be subject to criminal penalties and her right to drive could be revoked for a minimum of 90 days; (d) that "after submitting to testing," she had the right to consult with an attorney and to have additional tests made by a person of her own choosing; and (e) that if she refused to take a test, the refusal would be offered in evidence against her at trial. Nyflot insisted that she be permitted to call her attorney before deciding, but the deputies explained to her that the law had changed and that she did not have that right. Nyflot at first agreed to take the test, and one of the deputies began to set up the Breathalyzer machine. Then, after the machine was ready, Nyflot said she would not take the test. One of the deputies told her that that was a refusal, and the other deputy began taking down the machine. Nyflot then was permitted to call her attorney. After talking with her attorney, she said that she would take a test. One of the deputies told her that she had already refused and that she could not change her mind.

In the trial court, Nyflot's attorney argued that (1) under Minn.Stat. § 481.10 (1984), as interpreted in *Prideaux v. State, Dept. of Public Safety,* 310 Minn. 405, 247 N.W.2d 385 (1976), Nyflot had a limited right to call her attorney before deciding whether to take a test and that the 1984 amendment changing the implied consent advisory did not change that right, and (2) in any event, she had a limited right to counsel in this situation under the sixth amendment of the Federal Constitution. The trial court rejected these arguments and sustained the revocation.

On appeal to the Court of Appeals, Nyflot argued (1) that the 1984 amendment did not effectively create an exception to section 481.10 in implied consent cases or change *Prideaux,* and (2) if it did, the legislation violated the sixth amendment, the

due process clause, and the equal protection clause of the Federal Constitution.

The Court of Appeals ruled that although the legislature apparently intended to take away a driver's limited right to counsel before testing, amending the implied consent advisory was not an effective way to do it. The court also made clear in its opinion that any attempt by the legislature to take away the limited statutory right to counsel recognized in *Prideaux* probably would violate a driver's sixth amendment right to counsel.

We first addressed the issue of right to counsel in implied consent cases in *State v. Palmer,* 291 Minn. 302, 191 N.W.2d 188 (1971), and held that a driver has no constitutional right to consult with counsel before deciding whether to submit to chemical testing. Then, in *Prideaux, supra,* we construed Minn.Stat. § 481.10 as giving a driver arrested for DWI a limited right to consult with counsel before deciding whether to submit to chemical testing. Section 481.10 provides:

> All officers or persons having in their custody a person restrained of his liberty upon any charge or cause alleged, except in cases where imminent danger of escape exists, shall admit any resident attorney retained by or in behalf of the person restrained, or whom he may desire to consult, to a private interview at the place of custody. Such custodians, upon request of the person restrained, as soon as practicable, and before other proceedings shall be had, shall notify any attorney residing in the county of the request for a consultation with him. Every officer or person who shall violate any provision of this section shall be guilty of a misdemeanor and, in addition to the punishment prescribed therefor shall forfeit $100 to the person aggrieved, to be recovered in a civil action.

We stated, "The importance of a driver's license and the binding decisions which must be made by the driver asked to submit to chemical testing make the chemical-testing process a 'proceeding' within the meaning of § 481.10 before which consulta-

tion with counsel is to be accorded." *Prideaux*, 310 Minn. at 419, 247 N.W.2d at 393. We added, however, that if the commissioner was correct in his contention that the implied consent statute forbade even limited consultation with counsel before chemical testing, then that statute, which was later and more specific in its scope, would control. *Id.* Finding no evidence of such a legislative intent, we concluded that a driver arrested for DWI had a limited right under section 481.10 to consult with counsel before deciding whether to submit to chemical testing. *Id.* at 419–21, 247 N.W.2d at 393–94.

In 1978, the legislature signified its agreement with *Prideaux* by expanding the implied consent advisory. Before the 1978 amendment, the driver was informed simply that his right to drive would be revoked if he refused to take a test and that he had a right to have additional tests made by a person of his own choosing. Minn.Stat. § 169.123 (1976). The amendment expanded the advisory to inform the driver as follows:

(1) that if testing is refused, the person's right to drive will be revoked for a period of six months; and

(2) that if a test is taken and the results indicate that the person is under the influence of alcohol or a controlled substance, the person will be subject to criminal penalties and the person's right to drive may be revoked for a period of 90 days; and

(3) that the person has a right to consult with an attorney but that this right is limited to the extent that it cannot unreasonably delay administration of the test or the person will be deemed to have refused the test; and

(4) that after submitting to testing, the person has the right to have additional tests made by a person of his own choosing.

Act of April 5, 1978, ch. 727, § 3, 1978 Minn.Laws 788, 792–93.

In 1983, the legislature added a warning that if the driver refused to take a test, the refusal would be offered in evidence against him at trial. Act of June 9, 1983, ch. 306, § 5, 1983 Minn.Laws 1742, 1744–45.

The 1984 changes in the advisory involved inserting new advice to the effect that Minnesota law "requires" the person to take a test, increasing the 6-month revocation period to 1 year, removing the advice to the effect that the driver has a limited right to consult with an attorney prior to testing, and changing the advice relating to additional testing so that it now informs the driver that he has a right to consult with an attorney "after submitting to testing" and to have additional tests made by a person of his own choosing. Act of May 2, 1984, ch. 622, § 10, 1984 Minn.Laws 1541, 1546–47.

■ The Court of Appeals, agreeing with Nyflot, concluded that the 1984 amendment of the implied consent law did not effectively take away the limited right to counsel that we recognized in *Prideaux*. This conclusion overlooks our statement in *Prideaux* that if the implied consent statute forbade even limited consultation with counsel before chemical testing, then that statute, being later and more specific in its scope, would control. Because the legislature originally signified its adherence to the *Prideaux* ruling by amending the advisory to include a limited right to counsel prior to testing, it makes sense that the legislature intended to abandon the *Prideaux* right to counsel by later amending the advisory to remove this right. Concluding that the 1984 amendment controls, we hold that a driver arrested for DWI no longer has even a limited statutory right to consult with counsel before deciding whether to submit to chemical testing.

■ However, Nyflot argues, and the Court of Appeals apparently agreed, that she has a constitutional right to consult with counsel in this context. Our decision in *Prideaux* did indicate, in dictum, that the decision to submit to testing was arguably a "critical stage" of the prosecution. 310 Minn. at 411–14, 247 N.W.2d at 389–91. At that time there was still some dispute as

to when a prosecution was commenced for purposes of attachment of the sixth amendment right to counsel. *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), which concluded that the sixth amendment right to counsel did not attach until judicial proceedings are formally commenced (by indictment, complaint or substitute for complaint), was a plurality opinion. Since then it has become clear that a majority of the Justices of the United States Supreme Court support the view espoused by the plurality in *Kirby*. *United States v. Gouveia*, ── U.S. ──, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984); *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); *Moore v. Illinois*, 434 U.S. 220, 98 S.Ct. 458, 541 L.Ed.2d 424 (1977); *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).

■ *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), gives a defendant a right to counsel in the case of custodial interrogation even though custodial interrogation occurs before the defendant is formally charged by complaint or indictment. In a footnote in his opinion in *Gouveia*, Justice Rehnquist states that the right to counsel in connection with custodial interrogation required in *Miranda* and *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), was the only arguable deviation from the usual rule that the sixth amendment right to counsel is not triggered until the commencement of adversary judicial proceedings. 104 S.Ct. at 2298 n. 5 ("we have made clear that we required counsel in *Miranda* and *Escobedo* in order to protect the fifth amendment privilege against self-incrimination rather than to vindicate the sixth amendment right to counsel."). Thus, it is clear that the Court is unlikely to find other situations requiring a triggering of the right to counsel before the formal initiation of a criminal prosecution.

■ It is also clear that the right to counsel recognized in *Miranda* does not apply to the limited questioning of a driver to determine if he will consent to a chemical test. The *Miranda* right to counsel

applies only to "interrogation," which the Court has defined as express questioning or other words or actions by police reasonably likely to evoke an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 300–02, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980). In *South Dakota v. Neville*, 459 U.S. 553, 564 n. 15, 103 S.Ct. 916, 923 n. 15, 74 L.Ed.2d 748 (1983), the Court made it clear that "in the context of an arrest for driving while intoxicated, a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda*." Of course, if the police arrest (as opposed to temporarily detain) a driver for DWI *and* interrogate him, then they must give him a *Miranda* warning, if the statements are to be admitted in evidence later. *Berkemer v. McCarty*, ── U.S. ──, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). As a practical matter, it makes sense for police not to interrogate an arrested driver until after completing the implied consent part of the investigation because of the danger that the *Miranda* warning will confuse the driver. *See State, Dept. of Highways v. Beckey*, 291 Minn. 483, 487, 192 N.W.2d 441, 445 (1971).

■ The due process and equal protection arguments advanced by Nyflot are also without merit. Under the due process clause, a defendant has a right to a fairly conducted lineup that is not so unnecessarily suggestive as to create a very substantial likelihood of irreparable misidentification. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). But the right to counsel that a suspect has at a lineup comes from the sixth amendment and that right attaches only after judicial proceedings have formally commenced. *Moore v. Illinois*, 434 U.S. 220, 224–27, 98 S.Ct. 458, 462–64, 54 L.Ed.2d 424 (1977). Similarly, due process does not require giving an arrested driver a right to consult with counsel before deciding whether to take a test that the law says he is required to

take, particularly where he is properly advised that he is required to take it.

■ The equal protection argument also has no merit. All arrested drivers—those who can afford counsel and those who cannot—are treated equally. Contrary to what defendant argues, drivers suspected of DWI are not treated differently than suspects of other crimes. The same rule as to the triggering of the sixth amendment right to counsel applies to all criminal defendants. Further, there is a rational basis for denying drivers permission to consult with counsel before deciding to submit to chemical testing.

■ As the United States Supreme Court reemphasized in *South Dakota v. Neville*, 459 U.S. 553, 559, 103 S.Ct. 916, 920, 74 L.Ed.2d 748 (1983), its decision in *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), "clearly allows a State to force a person suspected of driving while intoxicated to submit to a blood alcohol test."[2] The legislature, therefore, could repeal the implied consent law and direct police officers to administer chemical tests against the suspect's will. *Id.* The obvious reason the legislature has chosen to retain the implied consent law is to avoid the violent confrontations which could occur when people are forced to submit to testing. *Id.* 459 U.S. at 559–60, 103 S.Ct. at 920–21. The legislature's decision to let people refuse in the ordinary case and not be forced to take a test does not mean that a defendant has a *right* to refuse. Even though arrested drivers do not have a right to refuse, they do have an important decision to make, the kind of

decision for which the advice of counsel arguably could be useful.[3] But, there being no right under the constitution to consult with counsel in this context, the decision whether or not to provide that right is one for the legislature to make. Satisfied that the legislature has clearly and effectively expressed its intent that arrested drivers not be given that right, we reverse the Court of Appeals and reinstate the decision of the trial court sustaining the revocation of Nyflot's license for unreasonably refusing to submit to testing.[4]

Reversed.

SCOTT and KELLEY, JJ., concur specially.

YETKA and WAHL, JJ., dissent.

SCOTT, Justice (concurring specially).

Although it seems unfair that Janice Nyflot could not call her attorney for sound and trusted advice when confronted with what she considered questionable advice by the police, it is now clear, after the recent amendment to Minn.Stat. § 169.123, subd. 2, that this is exactly what the legislature intended. Act of May 2, 1984, ch. 622, § 10, 1984 Minn.Laws 1541, 1546. Only a constitutional restriction could overrule this legislative result: that one has the right to consult an attorney only "after submitting to testing." Minn.Stat. § 169.-123, subd. 2(b)(4) (1984). It seems clear to me that the constitutional issue has been answered by *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and its progeny. *Schmerber* says:

---

2. *Schmerber* was reaffirmed even more recently in *Winston v. Lee*, — U.S. —, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985), a case upholding a federal district court's injunction against surgical removal of a bullet from the chest of an armed robber.

3. An attorney may advise the driver of the consequences of refusal and of the consequences of taking the test and failing it. He also may advise the driver to take the test. He may not, *subsequent to this decision,* ethically advise the driver not to take the test, since the law, *as now interpreted,* requires the driver to take the test. In short, what the attorney may tell the driver is

what the implied consent advisory tells the driver. Of course, some drivers are more likely to believe the advisory if it comes from an attorney.

4. Nyflot's expression of willingness to take the test after she talked with her attorney was an ineffective attempt to avoid the consequences of her refusal. *State, Dept. of Public Safety v. Early,* 310 Minn. 428, 247 N.W.2d 402 (1976); *State v. Palmer,* 291 Minn. 302, 308–09, 191 N.W.2d 188, 191–92 (1971) ("the testing officers should not be required 'to await the driver's convenience of a different time or place' to submit to the statutory requirement.")

"The question is squarely presented therefore, whether the chemical analysis introduced in evidence in this case should have been excluded as the product of an unconstitutional search and seizure." 384 U.S. at 766–67, 86 S.Ct. at 1833. The testing for blood alcohol is a Fourth Amendment matter, a search and seizure. There is no constitutional right to consult· an attorney before a search is conducted. This issue is therefore resolved by the determination of legislative intent, as discussed by the majority, with whom I agree.

KELLEY, Justice (concurring specially)

I concur in the result reached by the majority, and, accordingly, would reverse the court of appeals. In my view, the majority has correctly decided that the legislature could, and did, amend the implied consent statute to forbid even limited consultation with counsel before chemical testing. The 1984 amendment, being later in time and more specific in scope, supplants the meaning of proceeding as found in Minn.Stat. § 481.10 (1984). *See Prideaux v. State, Department of Public Safety*, 310 Minn. 405, 419, 247 N.W.2d 385, 393 (1976). Therefore, the Commissioner is not precluded from revoking appellant's drivers license for her refusal to submit to such chemical testing under Minn.Stat. § 169.-123 (1984). In my opinion, that should resolve this case, and no further discussion of the constitutionality of the amendment is necessary for resolution of this appeal.

The court of appeals made clear that in its view any attempt by the legislature to take away the limited right to counsel prior to testing would violate the driver's sixth amendment right to counsel. Before this court, however, Appellant Nyflot advanced additional arguments that due process and equal protection rights under both the state and federal constitutions are violated if a driver arrested for driving under the influence of intoxicating liquor (DWI) is not afforded the limited "right" to pre-testing

advice of counsel. Both the majority opinion and the dissent address these issues on the merits.

This case does not involve a criminal prosecution for driving under the influence of intoxicating liquors. It is a civil action to revoke a driver's license. *See Goldsworthy v. State Department of Public Safety*, 268 N.W.2d 46, 49 (Minn.1978); *State, Department of Highways v. Beckey*, 291 Minn. 483, 486, 192 N.W.2d 441, 444 (1971). The issue before us is not whether, in a criminal DWI prosecution, the state could be precluded on constitutional grounds from introducing evidence of the appellant's refusal, after denial of pre-testing attorney consultation. This case does not demand that we determine the constitutionality of Minn.Stat. § 169.121, subd. 2 (1984) should the state attempt to introduce the test refusal in a criminal DWI prosecution.[1] In this civil action it seems patent to me that discussion of constitutional precepts is irrelevant. By its very wording, the sixth amendment to the United States Constitution prefaces the rights therein ensured with the words, "In all criminal prosecutions * * *." U.S. Const. amend. VI. This license revocation proceeding is a civil, not a criminal action. Likewise, Article 1, Section 6 of the Minnesota Constitution, in assuring assistance of counsel, is prefaced, "Rights of accused in criminal prosecutions." Minn.Const. art. 1, § 6. Moreover, Article 1, Section 7 of the Minnesota Constitution states, in part, "No person shall be held to answer for a criminal offense without due process of law * * *." Minn.Const. art. 1, § 7. Since the issue raised here is in a civil, not a criminal proceeding, I deem the constitutional discussion in both the majority and dissenting opinion to be premature, and, more importantly, irrelevant to the issue before the court.

By the 1984 amendment, the legislature has clearly evinced an intention that, in drivers' revocation cases, at least, a driver

---

**1.** In a criminal DWI prosecution, Minn.Stat. § 169.121, subd. 2, in appropriate part, provides that "[e]vidence of the refusal to take a test is

admissible into evidence in a prosecution under this section * * *."

arrested for DWI no longer has a limited right to consult with counsel prior to deciding whether to submit to testing. Since the driver's revocation action is civil in nature and since the sixth amendment to the United States Constitution and Article 1, Sections 6 and 7 of the Minnesota Constitution have to do only with criminal proceedings, I would reverse the court of appeals.

YETKA, Justice (dissenting).

I respectfully dissent. I fully recognize that drunk driving is a serious national problem which should be dealt with through strict laws and vigorous enforcement. The problem must, however, be combatted within the confines of the law and the constitution and without demeaning the legal profession.

## I.

At the outset, it is important to bear in mind what this case is all about. In my opinion, it is *not* a question of whether one is for or against tougher laws and penalties for drunk drivers nor is it a question of whether a law makes it easier for law enforcement officers to remove drunk drivers from the road. The sole issue in this case is whether a person arrested by the police for suspected drunk driving has a legal or constitutional right to consult an attorney before deciding whether to submit to chemical testing for alcohol concentration. I would hold that our opinion in *Prideaux v. State, Dept. of Public Safety,* 310 Minn. 405, 247 N.W.2d 385 (1976), is still good law and ought to be followed.

The state's argument is something like this:

1. After our decision in *Prideaux,* more people asked for the right to consult an attorney before submitting to chemical testing than previously.

2. The 1984 Legislature amended the law to no longer require officers to advise people that they have a right to counsel before submitting to tests.

3. The legislature has thus decided that more chemical tests and statistical data as a result thereof secured from drivers suspected of driving while under the influence are desirable and that a conviction for drunk driving is easier to obtain with such tests.

4. Consulting with an attorney results in fewer tests being undertaken as illustrated by the fact that, prior to the 1984 amendments, 33% refused to take the test whereas, following the amendments, the refusal rate averaged 24%.

5. Therefore, the legislature intends that everyone arrested for suspected drunk driving should be required to take the test before consulting an attorney.

I find such arguments spurious and without support in the record. To the contrary, the facts in the record support the opposite conclusion.

In this state, any person in police custody accused of wrongdoing has a statutory right to consult with an attorney. Since 1887, our statutes have required that:

> All officers or persons having in their custody a person restrained of his liberty upon any charge or cause alleged, except in cases where imminent danger of escape exists, shall admit any resident attorney retained by or in behalf of the person restrained, or whom he may desire to consult, to a private interview at the place of custody. Such custodians, upon request of the person restrained, as soon as practicable, and before other proceedings shall be had, shall notify any attorney residing in the county of the request for a consultation with him. Every officer or person who shall violate any provision of this section shall be guilty of a misdemeanor and, in addition to the punishment prescribed therefor shall forfeit $100 to the person aggrieved, to be recovered in a civil action.

Minn.Stat. § 481.10 (1984). This statute has never been amended. As counsel for the state admitted, the 1984 Legislature was presented several proposals to amend section 481.10 to exclude specifically the implied consent situation, but rejected them

all. Today, by limiting the statute's effect, this court has effectively amended the statute without legislative authorization.

The majority's rationale is that by merely changing language about the right to counsel in the implied consent advisory, the explanation of the DWI law read to suspected drunk drivers, the legislature somehow changed the substantive law on right to counsel embodied in a wholly separate statute, section 481.10. In *Prideaux*, 310 Minn. 405, 247 N.W.2d 385, this court unequivocally held that the right to counsel guaranteed under section 481.10 applies when an allegedly drunk driver is required to submit to chemical testing.[1] We reached this conclusion in spite of the fact that police officers were not then required to advise an allegedly drunk driver of any right to counsel. Minn.Stat. § 169.123, subd. 2 (1974). In 1978, the legislature did amend the advisory to conform with the requirements of section 481.10 and *Prideaux*. Act of April 5, 1978, ch. 727, § 3, 1978 Minn.Laws 788, 792–93 (codified at Minn.Stat. § 169.123, subd. 2(b)(3) (1978)). Thus, the fact that an accused person was *informed* of that right in no way enhanced or diminished the right itself; rather, the advisory only ensured that the person would intelligently exercise it. By contrast, the majority would limit the accused's substantive rights because the advisory now *misinforms* her of her rights.

## II.

Chemical testing under the DWI statute is an attempt by the state to seize evidence. Unlike most evidence seizures, however, the person of the accused must be invaded to obtain the evidence either by drawing blood, sampling breath, or collecting urine. When the state seeks to obtain physical evidence from the accused's person, the accused's right to privacy may limit the state's right to collect the evidence. *Winston v. Lee,* —— U.S. ——, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985) (state cannot force

defendant to have bullet surgically removed to determine if it was shot from robbery victim's gun); *Price v. Sheppard,* 307 Minn. 250, 239 N.W.2d 905 (1976) (Minnesota recognizes right to privacy; intrusive drugs cannot be administered to nor can surgery be performed on patients in mental institutions without consent). The United States Supreme Court has already recognized that chemical testing raises privacy issues. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). I agree that the state may require tests under certain circumstances in which the state's interest outweighs the intrusion on the individual's privacy. As *Schmerber* noted, however, just because the "Constitution does not forbid the States [sic] minor intrusions into an .individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions." *Id.* at 772, 86 S.Ct. at 1836. Here, the state has taken that extra step; they have required the test *and* denied the right to counsel.

Although privacy is "the most comprehensive of rights and the right most valued by civilized men," *Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting), it is not absolute. The government can intrude on one's privacy if the intrusion is reasonable. Reasonableness is determined by balancing the individual's interests against the state's interests.

The individual's interests include, first, "the extent to which the procedure may threaten the safety or health of the individual." *Winston v. Lee,* —— U.S. ——, 105 S.Ct. 1611, 1617, 84 L.Ed.2d 662 (1985). Denying access to counsel while requiring a chemical test does not threaten the individual's life or health. The first factor does not enter into the analysis.

The second factor is "the extent of intrusion upon the individual's dignitary inter-

---

**1.** Contrary to the state's contention, the 1984 amendment did not make chemical testing mandatory. Chemical testing has been mandatory all along. *Compare* Minn.Stat. § 169.123, subd.

2 (1974) with Minn.Stat. § 169.123, subd. 2(a) (1984). The 1984 amendment simply changed the advisory to reflect more accurately the substantive law.

ests * * *." *Id.* An intrusion on one's dignity is one which damages "the individual's sense of personal privacy and security." *Id.* Forcing an individual to accompany police officers to the police station injures a person's dignity. *Id.* (citing *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)). Under the implied consent law, as interpreted by the majority, the police can not only pluck us from the highway and drag us to the station house, but also hold us incommunicado until we submit to or refuse chemical testing. If forcing an individual to a police station alone is an intrusion on one's dignity, holding someone incommunicado on top of it makes the intrusion all the more severe. Such are the tactics of a police state, not of a free state respectful of an individual's dignity. I find the majority's interpretation a grave intrusion on the dignity of the individual.

This grave intrusion on an individual's dignity must be weighed against the state's interests. The state claims that denying a right to counsel will decrease the number of refusals to take the chemical test and increase the number of DWI convictions. Even if consultation with an attorney does increase the number of refusals, those who refuse lose their licenses for a year. Minn. Stat. § 169.123, subd. 4 (1984). Either way, the driver is severely punished and the state relatively unharmed. Even without the chemical test, the driver can still be convicted of driving while intoxicated.

The state presented no evidence that consultation with attorneys in anyway affected either the test results or the accused's decision whether or not to take the test. The right to counsel has always been limited so that it does not interfere with chemical testing. *Prideaux*, 310 Minn. at 421, 247 N.W.2d at 394. A short phone call to an attorney, so that the accused can be apprised of his rights or obligations by a third party, will not take up enough time to affect the accused's blood alcohol concentration significantly. The state presented no authority to support the proposition that consulting an attorney makes the accused more likely to refuse testing. In this case,

for example, after consulting with an attorney, Nyflot wanted to take the test she had earlier refused. The fact that the number of refusals has decreased since the new DWI law went into effect more than likely has to do with the doubling of the penalty for refusal from 6 months to a year.

The person suspected of drunk driving is generally an average citizen in a totally new, confusing, and uncomfortable situation. One's dignity, the dignity of a free citizen to determine one's rights and obligations through consultation with a trusted counselor rather than one's accusers, is gravely intruded upon. This grave intrusion is balanced against, at best, a weak and ill-supported state interest. The state has failed to show that the intrusion is reasonable; thus, denying counsel is constitutionally invalid.

### III.

The majority argues that the chemical testing is not a critical stage in a criminal proceeding which triggers one's Sixth Amendment right to counsel. I disagree.

While, as the majority points out, it seems that most of the justices on the United States Supreme Court support the rationale of *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), that the right to counsel does not attach until judicial proceedings are formally commenced, this does not change the fact that the *Kirby* rationale is shortsighted and arbitrary. This court has long recognized that shortsightedness, as evidenced by our extension of the right to counsel to areas traditionally thought of as civil. *Cox v. Slama*, 355 N.W.2d 401 (Minn.1984) (civil contempt hearings); *Hepfel v. Bashaw*, 279 N.W.2d 342 (Minn.1979) (paternity hearings). Nonetheless, even under *Kirby*, the implied consent process should be considered a critical stage of the criminal process.

The right to counsel attaches before trial for the obvious reason that a defendant, standing alone against the state, is put at an unfair advantage. Rights waived, ei-

ther out of ignorance or through intimidation, because a defendant is denied counsel before trial, gives the state an unfair advantage. *See Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). When the pretrial investigation reaches a "critical" stage, the right to counsel attaches. The United States Supreme Court has defined that critical stage as: "[T]he accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *United States v. Wade,* 388 U.S. 218, 226, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967).

Although *Kirby* and its progeny seem to indicate that, save for the *Miranda* situation, formal proceedings must be commenced before the right to counsel attaches, such a view ignores the realities of the implied consent situation. The fact that implied consent is labeled a "civil" proceeding is not dispositive. *Prideaux,* 310 Minn. at 409, 247 N.W.2d at 388. As the state points out, chemical testing is the best evidence for a criminal DWI conviction. In fact, a reading over .10 is positively damning; it is, in essence, a conviction.

The next step for the police is to ticket the suspect. The ticket, in essence a summons to appear in court, is the functional equivalent of a complaint. Formal proceedings are commenced with the issuance of the ticket and, thus, under *Kirby,* the right to counsel attaches. However, since the driver is not taken in for testing unless unable to perform field sobriety tests or to pass a preliminary breath test, the officers have probable cause to arrest the driver before the chemical test is given. The ticket could easily be given upon arrival at the station or even out on the highway. The fact that the police happen to follow a procedure whereby formal charging is done only after the chemical test is merely a manipulation of the system. This court said in *Prideaux:* "[T]he decision whether to take or refuse chemical testing is arguably a 'critical stage' in the driving-under-the-influence proceedings." *Prideaux,* 310

Minn. at 411, 247 N.W.2d at 389. I agree with the Texas Court of Appeals when they write, "It stretches reason to say this is not a critical stage of the pretrial proceeding." *Forte v. State,* 686 S.W.2d 744, 754 (Tex. App.1985).

### IV.

Most persons are confused about the many laws that exist. What the public usually understands, and indeed expects, is that if one is in trouble, the first thing to do is consult with a lawyer. That right is so basic, so fundamental, and secured over so many centuries of struggle with tyranny as to become sacred. What kind of message does the majority decision then send out? It says, "Yes, you have the right to counsel, but not until we have all the evidence to convict you." The state argues that if you permit an attorney to be consulted here, you will have to allow one to be consulted before a search warrant is exercised or before a search of one's auto or clothing can be made pursuant to an arrest. That argument too is false. This case differs because it involves a bodily intrusion.

It is popular today, as it has been over the centuries, to be critical of lawyers, but I must remind the citizens of this state that our legal and judicial system is most unique in a world filled with tyranny and oppression. What makes it unique is that we do have a third branch of government to act as a check and balance on excesses of the executive and legislative branches to protect individuals against tyranny and abuses of those branches. Our constitution was drafted for that purpose. Sometimes lawyers are prevailed upon to represent unpopular causes and unpopular clients, but because they do so, we are better for it.

I, therefore, resent the implication that consulting one's attorney is a barrier to law enforcement or to removing the drunk driver from the highway. There is not one shred of competent evidence to bolster that argument. Good law enforcement is the

result of strong police work, strong prosecutorial services, reasonable rules of procedure, and strong defense counsel. The strength of opposing forces insures honest, efficient and non-dictatorial results.

What the state fails to mention when it claims that, since the 1984 amendments to the law, there have been fewer refusals to take the test is that those amendments also doubled the penalty for refusing the test. Prior to 1984, a refusal to submit to the test could result in a 6-month suspension of license. After 1984, refusal to take the test resulted in a revocation of a license for 1 year. It is far more logical to conclude, therefore, that it was the increase in penalty rather than the denial in the right to counsel that resulted in the decrease of refusals to take the test.

Moreover, the very argument the state uses is refuted by the facts of this case. Here, the defendant at first refused to take the test and kept insisting on her right to talk with her attorney. When she was permitted to call her attorney, he advised her to take the test! All this was accomplished in less than 30 minutes. Yet, after she had consulted her attorney, the police then advised her, in effect, "Sorry, you had the chance to take the test. You didn't take that chance so now you can't change your mind. Your license has already been revoked." In all logic, if it is the test result the state wanted, it surely is a distorted way to apply the statute. The state, when confronted at oral argument with the poor logic of its argument, argued, in effect, that it made no difference whether the legislature was logical or illogical: the legislature intended to deny the right to counsel. I disagree.

First, legislative intent is not clear. True, it amended the advisory section of the statute, but it did not amend section 481.10, the source of the right to counsel in an implied consent test. When two statutes can be read in harmony with each other, especially when we are dealing with such a fundamental right as right to counsel, we can and should interpret the 1984 amendments as still permitting the right to counsel.

Even if the majority is correct that the intent of the legislature is clear and that it intended to deny counsel in the situation presented here, I would then strike down the statute on constitutional grounds. The majority decision cites the United States Constitution and decisions of the United States Supreme Court as pointing in the direction of a decision that there is no constitutional right to counsel in this situation. That position is subject to argument, but even if it is valid, what the majority ignores is that we have our own Minnesota Constitution. A state is free to offer its citizens greater protection in its constitution than is offered by the federal law. This is true whether the words of the United States Constitution and the state constitution are similar or not.

In *Prideaux,* although deciding the case on statutory grounds, this court clearly stated that it felt the logic of *State v. Palmer* was no longer valid. We said, "Upon reflection, we have some doubt as to the continuing vitality of these cases." *Prideaux,* 310 Minn. at 409, 247 N.W.2d at 388. We further said:

> The choice, however, may be a meaningful one to an individual driver. For example, the driver who is requested to submit to chemical testing might not know that he can reasonably refuse the test in certain circumstances where the officer did not have reasonable ground for arrest or for requesting the test, did not properly inform the driver of his rights, or confused the driver as to his rights. *State, Dept. of Highways v. Beckey,* 291 Minn. 483, 192 N.W.2d 441 (1971). Moreover, depending upon the individual driver's circumstances, the decreased possibility of criminal conviction may be worth the 6-month loss of his license if he does not depend on his driver's license for his livelihood. If the driver was involved in an accident resulting in death, he might face more serious criminal proceedings in which the test results could be important evidence

against him. In the above instances, and others we cannot immediately foresee, a driver requested to submit to testing might want to seriously consider refusing the test. While such situations may be rare, they are certainly not impossible or even highly improbable. When those situations do arise, the driver must make a critical and binding decision regarding chemical testing which will affect him in subsequent proceedings. This decision is just as critical and just as binding as a decision regarding whether to make a verbal statement, which is one zealously protected by current case law. A driver ought to have the assistance of his own counsel in making the decision about whether to refuse testing.

Even in the vast majority of cases in which competent counsel would advise his client to take the test, the valuable right to counsel is not wasted. An arrested driver may be confused, dazed, and suspicious of the arresting officer, not only because of the possible influence of alcohol, but perhaps because of injury due to accident, and other reasons. Where the important chemical-testing procedures are not unreasonably delayed or impaired, the driver should have the benefit of the knowledgeable advice of his own counsel, who may assure him that the officer's statements about his rights and obligations are correct. The recognition of such a right will encourage compliance with the chemical-testing procedures in an atmosphere of fundamental fairness.

*Id.* at 412–13, 247 N.W.2d at 390 (citations omitted).

The majority opinion would, in effect, overrule the spirit and the intent of *Prideaux* only 9 years after it was written—a shocking capitulation to alleged legislative intent. I again quote the following language from *Prideaux:*

> We have referred above to a *limited* right to counsel. Because of the importance of uniformity and clarity in implied-consent procedures, we would indicate specifically the nature of the right

and its limitations. Consistent with this opinion, any person who is required to decide whether he will submit to a chemical test in accordance with § 169.123 shall have the right to consult with a lawyer of his own choosing before making that decision, provided that such a consultation does not unreasonably delay the administration of the test. The person must be informed of this right, and police officers must assist in its vindication. The right to counsel will be considered vindicated if the person is provided with a telephone prior to testing and given a reasonable time to contact and talk with counsel. If counsel cannot be contacted within a reasonable time, the person may be required to make a decision regarding testing in the absence of counsel. The above procedure will ensure an adequate opportunity to consult with counsel without in any substantial way delaying the administration of the test. Indeed, counsel for the department concedes in its brief:

> "* * * True, a certain amount of time is nearly always spent by an arresting officer on matters apart from obtaining chemical test specimen while the arrestee remains in his presence. It may be that a suspect's use of a readily available telephone during such an unrelated delay would in some cases not at all hold up administration of a chemical test."

*Id.* at 421, 247 N.W.2d at 394.

Finally, I am cognizant of the hesitancy of courts to thwart the public will expressed by the legislature when pursuing popular causes, but I believe that even if the legislature really intended, in its 1984 amendments, to deny the right to counsel and felt that that denial would result in more tests and more convictions, it would be dishonest to argue that such a procedure is really an effective cure for drunk driving. If the legislature were really serious in limiting drunk driving, it could more directly and honestly deal with the subject matter. Here are just a few examples of what it could do:

1. Attempt to limit the sale and consumption of alcohol rather than extending its use.

2. Limit the advertising on billboards and elsewhere which now occurs along every section of our highways calling attention to the various "watering holes" that exist.

3. Make a blood alcohol content of .05 or even a trace of alcohol as an indication of a condition influencing the ability of one to drive and, thus, a violation of the law.

4. Expand the educational programs of this state and warn the public of the dangers of the use and abuse of alcohol and its consequences.

To follow the majority argument to logical conclusion, suppose the legislature passed a law requiring a blood alcohol test in every case even if it were necessary for officials to bind, gag, and shackle a person. I am horrified by the vision that it presents; yet, that is a possible conclusion. Surely, that is not the image of justice in the United States of America that our nation would like to project. It should be particularly offensive to citizens of this state, a state which has prided itself as being in the forefront in protecting the rights of its citizens. The opinion of the majority is more akin to the laws prevailing in totalitarian states.

Accordingly, I would affirm the court of appeals.

WAHL, Justice (dissenting).

I join the dissent of Justice Yetka.