## STATE OF FLORIDA v PERRINE
### Case No. 86TT32738
County Court, Lee County
January 13, 1987

### APPEARANCES OF COUNSEL

**Lynne E. Dailey,** Assistant State Attorney, for plaintiff.
**Robert S. Reiff, Essen & Essen,** for defendant.

### OPINION OF THE COURT

RADFORD R. STURGIS, County Judge.

## OPINION AND ORDER

### DEFENDANT'S CONTENTION

Gary Perrine, the defendant, argues that a Uniform Traffic Citation issued by a Law Enforcement Officer under Section 316.193 F.S. (D.U.I.), constitutes a "formal charge", initiates criminal proceedings and invokes his Sixth Amendment right to counsel. He further argues that the proper sanction for eliciting evidentiary information (field/blood tests) from an uncounselled defendant is dismissal.

### FACTS

Mr. Perrine was stopped and detained by a Florida Highway Patrol officer for "erratic driving". After observing Perrine, the officer requested that he take field sobriety and breathalyzer tests. Mr. Perrine completed both tests, was Mirandized, formally arrested and issued a D.U.I. citation charging both impairment and a .17 B.A.C. It was argued but not established that the officer issued the D.U.I. citation at the scene and added the .17 reading after the breathalyzer test was completed.

### ISSUES

I. WHETHER THE ISSUANCE OF A UNIFORM TRAFFIC CITATION BY A FLORIDA LAW ENFORCEMENT OFFICER CHARGING THE DEFENDANT WITH D.U.I. IS A "FORMAL CHARGE" IN THE SENSE THAT FORMAL PROCEEDINGS ARE INITIATED, THEREBY GUARANTEEING THE DEFENDANT A RIGHT TO COUNSEL UNDER THE SIXTH AMENDMENT.

II. WHETHER THE CONFRONTATION WITH LAW ENFORCEMENT OFFICIALS DURING THE FIELD SOBRIETY AND BREATHALYZER TESTING PHASES OF THE D.U.I. ARREST PROCESS CAN BE CHARACTERIZED AS A "CRITICAL STAGE" DURING WHICH A SUBSTANTIAL RISK OF PREJUDICE TO THE DEFENDANT'S FUNDAMENTAL RIGHT TO A FAIR TRIAL EXISTS WHICH THE PRESENCE OF COUNSEL MAY REMEDY.

III. WHETHER, IF ISSUES I AND II ARE ANSWERED IN THE AFFIRMATIVE, ALL EVIDENCE COLLECTED WITHOUT ASSISTANCE OF COUNSEL MUST BE SUPPRESSED AND/OR THE CASE DISMISSED.

### FORMAL CHARGE

The Supreme Court of Florida recognized in *Hurley v. State*, 322 So.2d 506, 507 (Fla. 1975) that the Florida Constitution does not

require a state attorney or grand jury to pass upon probable cause for the commission of a traffic offense (Article I, Section 15(a) Fla. Const. 1968).

"Sections 316.018(2) & (3) (currently F. S. 316.650(3)) direct the deposit of all traffic offense tickets with the appropriate court, after which judicial proceedings commence. A State Attorney or his assistant actually prosecutes these matters on behalf of the state. The issuing police official is not the prosecutor."

The booking report and citation are forwarded to the prosecutor for his review. Then, the prosecutor may elect to file a formal information, prosecute on the ticket itself, or refuse to prosecute entirely. Thus, it is not unless or until the prosecutor elects to present a charge at arraignment that the prosecutorial forces congeal and the *government commits itself to prosecute.* It is at that moment that the accused becomes a defendant before a *tribunal with power to take his liberty* and is *confronted with both the intricacies of the law and the advocacy of the public prosecutor.* (emphasis supplied.) *U.S. v. Gouveia,* 467 U.S. 180, 81 L.Ed 2d 146, 104 S. Ct. 2292; *Moran v. Burbine,* 475 U.S. —, 89 L.Ed 2d 410, 427, 106 S. Ct. 1146. See also *Nyflot v. Minnesota,* — U.S. —, 88 L.3d 2d 567 (1985) where *Nyflot* petitioned unsuccessfully that in a D.W.I. offense, formal adversary proceedings must be considered to have commenced upon the issuance of a traffic ticket. Also, *State v. Hoch,* — So.2d —, 11 FLW 2661 (3d DCA 1986#85-1905) where a request was made and denied for a lawyer before taking the breath test. The District Court held that ". . . the defendant was given the option of taking the breathalyzer test following his arrest, *but before the initiation of criminal proceedings against him.* (emphasis supplied)."

This court therefore finds that the issuance of a uniform traffic citation by an arresting officer charging an individual with driving under the influence, standing alone, does not constitute a "formal charge" invoking a Sixth Amendment right to counsel prior to being reviewed, ratified, amended, or charged by information by the prosecuting agency and presented to a defendant at arraignment.

*CRITICAL STAGE*

Counsel further argues that since the field and breathalyzer tests may ultimately affect the defendant's adjudication, they should therefore be logically regarded as "critical stages".

The "critical stage" concept and limitations are set out in *U.S. v. Gouveia,* 467 U.S. 180, 81 L. Ed 2d 146, 104 S. Ct. 2292. The Supreme

Court traced the history of the Sixth Amendment right to counsel application to trial quoting the following:

> "In a line of constitutional cases in this Court stemming back to the Court's landmark opinion in *Powell v. Alabama*, 287 U.S. 45, it has been firmly established that a person's Sixth Amendment and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him.
>
> . . . [W]hile members of the Court have differed as to the existence of the right to counsel in the contexts of some of the above cases, *all* of those cases have involved points of time at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information or arraignment." Id., at 688-689 (emphasis in original).

That interpretation of the Sixth Amendment right to counsel is consistent not only with the literal language of the Amendment, which requires the existence of both a "criminal prosecution" and an "accused," but also with the purposes which we have recognized that the right to counsel serves. We have recognized that the "core purpose" of the counsel guarantee is to assure aid at trial, "where the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor." *United States v. Ash*, 413 U.S. 300, 309 (1973). Indeed the right to counsel.

> "embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel." *Johnson v. Zerbst*, 304 U.S. 458, 462-463 (1938).

Although we have extended an accused's right to counsel to certain "critical" pre-trial proceedings, *United States v. Wade*, 388 U.S. 218 (1967), we have done so recognizing that at those proceedings, "the accused [is] confronted, just as at trial, by the procedural system, or by his expert adversary, or by both," *United States v. Ash, supra*, at 310, in a situation where the results of the confrontation "might well settle the accused's fate and reduce the trial itself to a mere formality." *United States v. Wade, supra*, at 224.

Thus, given the plain language of the Amendment and its purpose of protecting the unaided layman at critical confrontations with his adversary, our conclusion is that the right to counsel attaches at the initiation of adversary judicial criminal proceedings "is far from a mere formalism." *Kirby v. Illinois, supra*, at 689. It is only at that

time "that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." Ibid."

A law enforcement officer begins gathering evidence against a suspected impaired driver long before field sobriety or breathalyzer tests are conducted. At trial, evidence of the defendant's "erratic driving", slurred speech, or flushed face, etc. may be a crucial to a jury as the field test or breathalyzer result.

To broaden "critical stage" analysis to encompass each and every factor which could possibly affect ultimate adjudication would serve only to undermine the entire evidence-gathering process.

No law requires that the police secure a lawyer for every person from whom evidence is sought during investigation under penalty of suppression. Obviously, not every evidence-gathering procedure is a "critical stage" under the Sixth Amendment. *State v. Newton*, 636 P 2d 393 (Or. 1981). Nor does the possibility that the encounter may have 'important consequences, standing alone, sufficient to trigger the Sixth Amendment right to counsel. *Moran v. Burbine*, 475 U.S. —, 89 L.Ed 2d 410, 428 S. Ct. — (1986).

Florida courts have applied federal constitutional law in determining that blood alcohol testing is not "testimonial" or "communicative" in nature nor is field sobriety testing a protected communication. *Bracken v. Boles*, 452 So.2d 540, 543 (Fla. 1984), *Edwards v. State*, 463 So.2d 551, 554 (5th DCA 1985), *State v. Hoch*, 11 FLW at 2662. A defendant, after being informed of his important Fifth Amendment rights under *Miranda*, is placed in the position of making an uncounselled decision as to whether to cooperate and speak with the police or to remain silent and invoke his right to counsel.

The constitution does not require that a defendant be provided with a lawyer to determine whether he needs a lawyer. It stands to reason that if the constitution does not require a lawyer to counsel an accused on the constitutionally protected issue of self-incrimination, then it certainly does not require a lawyer for an accused when he decides whether to refuse a blood alcohol test which he has already consented to and the result of which is not a protected communication.

"Just as a defendant is not entitled to an attorney's advice when refusing to submit to fingerprinting, photographing, measuring, speaking, walking or gesturing for identification, a defendant is not entitled to a lawyer's advice when refusing a breath test. *Hoch*, 11

68

FLW at 2663 citing *McCambridge v. State*, 712 SW 2d 499, 503 (Texas Ct. App. 1986)"

*Nyflot v. Commissioner of Public Safety*, 369 N.W. 2d 512 (Minn. 1985) is a D.W.I. case in which the right to counsel was denied relating to a decision whether or not *Nyflot* should take a blood alcohol test under Minnesota's implied consent law. The Supreme Court of Minnesota held that:

> "Due process does not require giving an arrested driver a right to consult with counsel before deciding whether to take a test that the law says she is required to take, particularly where she is properly advised that she is required to take it." *Id.* at 516, 517.

The Court noted that the U. S. Supreme Court has emphasized that *Schmerber v. California* 384 U.S. 757, 16 L. Ed 2d 908, 86 S. Ct. 1826 (1966) "clearly allows a state to force a person suspected of D.W.I. to submit to a blood alcohol test." The obvious reason that the legislature has chosen to retain the implied consent law is to avoid physical confrontations which might result from forcing drivers to take such a test. "The legislative decision to let people refuse is the ordinary case and not to be forced to take a test does not mean that a defendant has a right to refuse." *Nyflot* at 517. [1]

There is a substantial difference between a line-up (where an officer's discretion is involved in selecting participants and the officer is in a position to influence the witness' selection) and an objective, scientific test, such as the blood alcohol test, which the accused can meaningfully confront through discovery, cross-examination and/or presentation of his own experts at trial. There is always a risk that counsel's absence from any evidence-gathering stage might derogate from a defendant's right to a fair trial, but such risk is *de minimus* at a breath test. *U. S. v. Wade*, 388 U. S. at 227, 228, 18 L.Ed 2d 1149, 1158, 87 S. Ct. 1932. Thus, the chamber of horrors presented in *Wade* is simply not present during blood alcohol testing.

---

[1] *Nyflot* appealed to the U. S. Supreme Court arguing that she had a Sixth Amendment right to counsel regarding her decision to take a blood alcohol test. She further asserted that in a D.W.I. offense, formal adversary proceedings must be considered to have commenced with the issuance of a traffic ticket and thus exposed her to· a "critical stage". Despite varying results around the country, the Supreme Court dismissed her appeal for want of a substantial Federal question. *Nyflot v. Minnesota*, — U.S. —, 88 L. Ed 2d 567 (1985). The Supreme Court has held that a dismissal of appeal for want of a substantial question is a decision on the merits and that "unless and until the Supreme Court should instruct otherwise, inferior courts are bound by summary decisions by this Court 'until such time as the Court informs [them] that [they] are not'". *Hicks v. Miranda*, U.S. 332, L. Ed 2d 223, 236, 95 S. Ct. 2281.

This minimal risk must be weighed against the probable emasculation of legislative intent to procure a blood alcohol reading as close in time as possible to the time of arrest to which the test relates. To force law enforcement to wait until an actual consultation with chosen counsel is secured, especially on weekends and holidays and often in rural areas, may well render blood alcohol testing meaningless. The breath result must be related back to the time that the defendant was driving and with each minute that expires before the test is administered the test becomes less and less relevant. The U. S. Supreme Court has long recognized that "exigent circumstances" under the Fourth Amendment require a balancing analysis between an accused's rights and the preservation of evidence.

Under Florida's implied consent law it must be recognized that "consent" describes a legal act; whereas "refusal" describes a physical reality. A person has the physical power to make a test impractical by refusing to blow or physically resisting a blood test. Consent on the other hand is legally implied by law and does not provide an accused with a legally recognized right to refuse. The purpose of the implied consent law was intended to eliminate a right of choice and recognize only that some individuals would unlawfully physically refuse the test.

> "Under an implied consent statute, a refusal to take the test is not a withholding of consent, but rather a refusal to comply with a consent already given . . . a driver has no legal right to refuse to be tested; the implied consent statute only gives him an option to refuse. However, that option to refuse 'cannot be equated with a legal right when the exercise of that option involves a penalty'. . . Since there is no legal right, there is no necessity that counsel be consulted." *Hoch*, 11 FLW at 2663, 2664.

Since drivers have only the physical power and not the legal right to revoke implied consent, such a decision is not one of constitutional dimension and cannot be considered a "critical stage". See also *Pastori v. State*, 456 So.2d 1212 (2d DCA 1984), where the appellate court refused to grant certiorari or to suppress the field sobriety or breath tests despite the fact that the defendant requested the assistance of counsel prior to the administration of the test.

The public policy behind the implied consent law is a sound one. It helps to insure cooperation in the timely procurement of scientific evidence which may serve to protect the innocent as well as detect the guilty, while at the same time evoking compliance without physical force and confrontation.

Clearly the Supreme Court of the U. S. has decided not to extend at

70

this time the right to counsel under the Sixth Amendment announced in *Kirby* to a D.U.I. implied consent test. In essence, the Supreme Court does not equate the issuance of a traffic citation by law enforcement to a "formal charge" and does not recognize the decision to take a blood alcohol test as a "critical stage". The recently rendered Florida decision, *Hoch*, is not only persuasive but at this time binding upon this Court. This Court rules that neither the field nor breathalyzer test constitutes a "critical stage" and that the issuance of a traffic ticket by an arresting officer does not constitute a "formal charge". Issue III need not be answered. Defendant's motions are therefore denied for the reasons set forth herein.

DONE AND ORDERED in Lee County, Fort Myers, Florida, on this 13th day of January, 1987.

### AMENDED ORDER
### (NUNC PRO TUNC)

THIS CAUSE having come on to be heard upon the Defendant's Motion for an Amended Order Nunc Pro Tunc to the time of the signing of the original Opinion and Order in this matter, which was signed January 13, 1987, and the Court having been presented with a stipulation entered into between the State of Florida and the Defendant, and being otherwise fully advised in the premises, it is hereby,

ORDERED and ADJUDGED that the Order signed January 13, 1987 shall be amended nunc pro tunc by the specific factual stipulation and finding that the DUI citation was issued at the scene of the Defendant's arrest. It is further

ORDERED and ADJUDGED that this issue is dispositive of the case. It is further

ORDERED and ADJUDGED that this Court finds the issue presented in this matter:

1. Has statewide applications; and,

2. Is of great public importance and will affect the uniform administration of justice.

THEREFORE, this Court certifies the questions as stated in the January 13, 1987 Opinion and Order to the Second District Court of Appeal pursuant to Rule 9.160, Florida Rules of Appellate Procedure.

DONE and ORDERED in Chambers at Fort Myers, Lee County, Florida, this 6th day of March, 1987.