STATE, DEPARTMENT OF HIGHWAYS, v.
WILLIAM GEORGE BECKEY.

192 N. W. (2d) 441.

December 3, 1971—No. 42913.

*Warren Spannaus,* Attorney General, *James M. Kelley,* Assistant Attorney General, and *Thomas G. Lockhart,* Special Assistant Attorney General, for appellant.

*Alan Stiegler* and *Mandel & Stiegler,* for respondent.

Heard before Knutson, C. J., and Rogosheske, Peterson, and Kelly, JJ.

ROGOSHESKE, JUSTICE.

The state appeals from an order of the Hennepin County Municipal Court rescinding an order of the commissioner of highways which administratively directed the revocation of respondent's driver's license pursuant to our implied-consent statute, Minn. St. 1969, § 169.123, upon respondent's alleged refusal to permit a chemical blood alcohol test. As authorized by the statutory scheme, the court's order followed a judicial hearing granted of right to the accused driver upon his request. Ap-

peal is now granted to either party from an adverse ruling of the court holding the hearing. See, State, Department of Highways, v. Normandin, 284 Minn. 24, 169 N. W. 2d 222 (1969); State, Department of Highways, v. Halvorson, 288 Minn. 424, 181 N. W. 2d 473 (1970).

The determinative issue submitted to the lower court under its authorized scope of inquiry was whether respondent's refusal to submit to a police-administered chemical test was based upon reasonable grounds.[1] The court heard the oral testimony of respondent and the interrogating officer requesting the test. The court also viewed a video tape of respondent's behavior and responses when he was in the traffic interview room under arrest for the criminal charge of driving under the influence of intoxicating liquor and was confronted with the officer's request to submit to a chemical test. By stipulation, the record also included the transcript of the testimony adduced at the previous day's jury trial of the criminal charge, which resulted in respondent's acquittal.[2] At the conclusion of the hearing on the license revocation, the court orally reviewed the evidence and declared its

[1] Minn. St. 169.123, subd. 6, provides in part: "* * * The hearing shall be recorded and proceed as in a criminal matter, without the right of trial by jury, and its scope shall cover the issues of whether the peace officer had reasonable and probable grounds to believe the person was driving or operating a motor vehicle while under the influence of an alcoholic beverage; whether the person was lawfully placed under arrest; whether he refused to permit the test, *and if he refused whether he had reasonable grounds for refusing to permit the test;* and whether at the time of request for the test the peace officer informed the said person that his right to drive might be revoked or denied if he refused to permit the test and of his right to have additional tests made by a person of his own choosing. The municipal court shall order either that the revocation or denial be rescinded or sustained and refer such order to the commissioner of public safety for his further action." (Italics supplied.)

[2] An acquittal of the criminal charge does not bar revocation of license under § 169.123. State, Department of Highways, v. Styrbicki, 284 Minn. 18, 169 N. W. 2d 225 (1969).

findings of fact and ultimate determination that respondent had reasonable grounds to refuse to permit the test. The state appeals and we affirm.

A review of the record discloses that the evidence bearing on the issue was conflicting. The court's determination was based upon factual findings, in essence: That the warnings given to respondent by the interrogating officer with respect to his constitutional rights to have an attorney present and to remain silent upon the criminal charge of driving under the influence of intoxicants were not distinguished from respondent's rights and obligations under the implied-consent statute;[3] and that the officer's request to permit the test was confusing and resulted in respondent's being reasonably misled, so that his refusal was not unqualified or was in fact based on reasonable grounds. Contrary to the officer's testimony that the test was unequivocally refused, respondent explained when asked by the court why he did not take the test:

"Because, sir, I didn't know—I didn't realize that that was necessary. I wanted—if I could have talked to somebody before, or then. I found out since that I should have, that it would have been a lot easier, through my attorney, but at the time I was just shaken up and I just thought it would be best if I just was quiet and didn't do anything until I talked to somebody."

Our implied-consent statute is designed to aid the proper enforcement of our driving-while-under-the-influence statute. The chemical tests provide a tool for determining blood alcohol concentrations indicating intoxication regardless of the availability of evidence of the accused's behavior. The term "implied consent," however, is a misnomer because the statute does not give

---

[3] A "Miranda" card warning was read to respondent by the arresting officer at the time of his arrest. It was again read by the interrogating officer immediately before he requested respondent to permit the test and informed him of the consequences of his refusal, and at that time respondent's conduct and responses were recorded on video tape.

the police the authority to administer the blood, breath, or urine test without the driver's actual consent. The statute requires that preliminary to requesting consent to a test the officer inform the person arrested that his driver's license may be revoked if he refuses.[4] Since this license revocation proceeding has been held to be civil rather than criminal in nature, no Miranda warning embodying the constitutional rights to counsel and to remain silent, applicable to criminal proceedings, is required to be given by the interrogating officer. State v. Palmer, 291 Minn. 302, 191 N. W. 2d 188 (1971).[5] If the person arrested refuses to permit chemical testing, none shall be given, and upon the officer's certificate of refusal and probable grounds to believe that the person had been driving under the influence, the commissioner of highways (now the commissioner of public safety) is mandated to revoke his driver's license, subject only to the judicial hearing provided by § 169.123, subd. 6. If, as there provided, the court holding that hearing finds an illegal arrest or the absence of probable grounds to believe the person was driving under the influence, or that he had reasonable grounds to refuse to be tested, the court shall rescind the revocation order of the commissioner.

The questions of whether a person arrested refused to take the test or had reasonable grounds to do so are questions of fact. Where, as here, the evidence and the inferences to be drawn therefrom conflict, the court holding the hearing must find the facts. Upon appeal, the question presented is whether such find-

---

[4] At the time of respondent's arrest, § 169.123, subd. 4, provided for an unconditional revocation for a period of 6 months. This provision has now been modified by L. 1971, c. 217, an amendment to Minn. St. 1969, § 171.30, which authorizes the issuance of a limited license where a driver's livelihood depends upon the use of his driver's license.

[5] But see, Minn. St. 481.10. Whether or not the legislature intended to grant to the person arrested a statutory right to consult an attorney before permitting a test was neither raised nor decided in State v. Palmer, 291 Minn. 302, 191 N. W. 2d 188 (1971).

ings are supported by the evidence. While we would have been aided had the lower court found the facts "specially," as required by our rules, we may not set aside factual findings unless they are "clearly erroneous." Rule 52.01, Rules of Civil Procedure. We entertain no doubt that there is ample evidence to support the court's factual findings. Surely, upon this record, an unjustified refusal by respondent does not appear as a matter of law.

Where the interrogating officer undertakes to repeat Miranda warnings given by the arresting officer at the time of the arrest as well as to inform the person arrested of his rights and obligations under the implied-consent statute without at the same time making clear that his constitutional rights to counsel and to remain silent do not apply to the implied-consent statute, it is not unlikely that confusion will occur, resulting in the arrested person's being misled into believing that he may remain silent and that he is being offered the option to postpone his decision and the chemical test until he can consult an attorney. Where the responses of the arrested person upon being requested to submit to a chemical test indicate that he is asserting a right which he has just been told he is free to assert, it is incumbent upon the officer to make clear that he has no constitutional right to consult an attorney before deciding whether he will submit to a test but merely that, at the time the request is made, he has a right to choose between permitting the test or refusing the test at the risk of revocation of his driver's license.

Affirmed.