STATE OF HAWAII, Plaintiff-Appellee, *v.* LARRY BROWN, Defendant-Appellant

NO. 8262

HONORABLE ARTHUR T. UEOKA, JUDGE

(NO. T28: 4/6/81)

SEPTEMBER 27, 1982

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

Defendant appeals from the May 14, 1981 order of the District Court of the Second Circuit revoking his driver's license for a period of six months, pursuant to the implied-consent statute, Hawaii Revised Statutes (HRS) § 286-155 (1976, as amended).[1] We affirm.

On February 22, 1981, defendant was the driver of an automobile that was involved in a collision in Maalaea, Maui. The investigating officer Olsten noted that defendant's face was flushed, his eyes were bloodshot and glassy, he had trouble maintaining his balance, had a strong odor of liquor on his breath, and his answers to Olsten's questions were confused. Olsten administered the field test for initial detection of drivers under the influence of intoxicating liquor and, when defendant failed all phases of the test, Olsten arrested him for drunk driving. When defendant was placed in Olsten's police vehicle, he began to make spontaneous statements. Olsten stopped him and advised him of his *Miranda* rights. Later,

---

[1] Hawaii Revised Statutes § 286-155 states:

§ 286-155 *Revocation of privilege to drive motor vehicle upon refusal to submit to testing.* If a person under arrest refuses to submit to a breath or blood test, none shall be given, except as provided in section 286-163, but the arresting officer shall, as soon as practicable, submit an affidavit to a district judge of the circuit in which the arrest was made, stating:

(1) That at the time of the arrest, the arresting officer had reasonable grounds to believe the arrested person had either been driving or was in actual physical control of a motor vehicle upon the public highways while under the influence of intoxicating liquor;

(2) That the arrested person had been informed of the sanctions of this section; and

(3) That the person had refused to submit to a breath or blood test.

Upon receipt of the affidavit, the district judge shall hold a hearing as provided in section 286-156, and shall determine whether the statements contained in the affidavit are true and correct. If the district judge finds the statements contained in the affidavit are true, the judge shall revoke the arrested person's license, permit, or any nonresident operating privilege for a period of six months.

\* \* \* \* \*

either in the police vehicle or at the station, Olsten informed defendant that he would have to take either a breathalyzer test or a blood test to determine the alcohol content of his blood, and if he refused to be tested his driver's license would be revoked for six months after a hearing before a magistrate. Defendant refused to take either test. As required by the statute, Olsten submitted an affidavit to the court setting forth the events and a hearing[2] was held in the district court on May 7, 1981.

At the hearing, Olsten testified that defendant's answers to Olsten's questions at the scene of the arrest indicated confusion or a refusal to cooperate.[3] He also testified that whenever he asked defendant which test he wished to take, defendant would ask him his advice as to which test to take.

After the State rested, defendant moved to dismiss because the evidence indicated he was confused. He argued that the case of *State v. Severino*, 56 Haw. 378, 537 P.2d 1187 (1975) was applicable and required a dismissal. The motion was denied.

Defendant then testified that the *Miranda* warnings were given

---

[2] Hawaii Revised Statutes § 286-156 (1976) states:

§ 286-156 *Hearing before a district judge.* A hearing to determine the truth and correctness of an affidavit submitted to a district judge shall be held within twenty days after the district judge has received the affidavit.

The district judge shall hear and determine:

(1) Whether the arresting officer had reasonable grounds to believe that the person had been either driving or in actual physical control of a motor vehicle upon the highways while under the influence of intoxicating liquor;

(2) Whether the person was lawfully arrested;

(3) Whether the arresting officer had informed the person of the sanctions of section 286-155; and

(4) Whether the person refused to submit to a test of his breath or blood.

[3] On cross-examination Olsten testified:

\* \* \* \* \*

Q. Officer, your Affidavit states that the defendant's speech was slurred, incoherent and confused.

A. Uh, huh.

Q. He appeared confused to you? Is that what you're trying to say?

A. I would ask him questions — I asked him what his age was. He told me, "I'm a hundred years old". I don't know — It was confusion or not cooperating.

\* \* \* \* \*

Transcript at 10.

once at the scene of the accident. Thereafter, the only discussion between the defendant and Olsten related to the implied-consent law. When asked which test he would like to take, defendant would ask Olsten to tell him which test he should take. This occurred several times. Defendant testified that he was confused as to which test to take or whether he should refuse to take any test at all or talk to someone first, in view of the *Miranda* warnings that had been given to him. There was no evidence that defendant asked to consult an attorney before deciding.

The court found that defendant had not been confused by the fact that the *Miranda* warnings were given before he was informed about the implied-consent law provisions; that there was sufficient time lapse between the time the *Miranda* warnings were given and the advice regarding the implied-consent law so that the former did not cause any confusion; that Olsten's testimony was far more credible than defendant's, and defendant was not confused as to his rights under *Miranda* "versus" his rights under the implied-consent law; and that if there had been confusion, defendant would have mentioned it at the time. The order revoking defendant's driver's license was subsequently entered.

The dispositive issue on appeal is whether Olsten was required to affirmatively inform defendant that his constitutional rights under *Miranda* were not applicable to the chemical test requirements of the implied-consent statute.

Defendant argues that *Severino, supra,* establishes that a police officer who has advised a person under arrest for drunk driving of his rights under *Miranda* and then advises the driver of his rights under the implied-consent law must affirmatively advise the person arrested that the *Miranda* advice does not apply to his decision to take or not to take a chemical test.

*Severino* does not so hold. In *Severino* the facts show that the defendant was *contemporaneously* advised of his rights under *Miranda* and the requirements and sanctions of the implied-consent law. The defendant refused to answer any questions or take any tests *until he had been afforded an opportunity to talk to his lawyer. Severino,* 56 Haw. at 380, 537 P.2d at 188.

In *Severino,* our supreme court cites *State Department of Highways v. Beckey,* 291 Minn. 483, 192 N.W.2d 441 (1971), which is also relied on by defendant in support of his argument. The Minnesota court

said, in *Beckey:*

> Where the *interrogating* officer undertakes to *repeat Miranda* warnings given by the *arresting* officer at the time of the arrest as well as to inform the person arrested of his rights and obligations under the implied-consent statute without at the same time making clear that his constitutional rights to counsel and to remain silent do not apply to the implied-consent statute, it is not unlikely that confusion will occur, resulting in the arrested person's being misled into believing that he may remain silent and that he is being offered the option to postpone his decision and the chemical test until he can consult an attorney. *Where the responses of the arrested person upon being requested to submit to a chemical test indicate that he is asserting a right which he has just been told he is free to assert, it is incumbent upon the officer to make clear that he has no constitutional right to consult an attorney before deciding whether he will submit to a test but merely that, at the time the request is made, he has a right to choose between permitting the test or refusing the test at the risk of revocation of his driver's license.* [Emphasis added.]

291 Minn. at 487, 192 N.W.2d at 445. Both *Severino* and *Beckey* are factually distinguishable from the case at bar.[4]

*Severino* further holds that the burden is upon the defendant to show that he was in fact confused. 56 Haw. at 382, 537 P.2d at 1190.

*Severino* holds only that, where a person arrested for drunk driving indicates by his responses that he is relying on his *Miranda* rights in refusing to submit to a chemical test for his blood alcohol content, the arresting officer is required to advise him that he has no constitutional right to counsel before deciding on whether he will submit, and the arrested person has the burden of showing that he was in fact confused by the *Miranda* warnings.

Actions taken under the implied-consent law are civil in nature. *Severino,* 56 Haw. at 380, 537 P.2d at 1189. The question of confusion on the part of the person arrested involves determinations of fact and a trial judge's findings on those facts will not be overturned

---

[4] *Beckey* is further weakened as a basis for defendant's argument by virtue of the fact that the Minnesota implied-consent law provides that one of the issues to be decided at the hearing is whether a driver had reasonable grounds for refusing to take the test. *Id.* 291 Minn. at 486, 192 N.W.2d at 443.

on appeal unless clearly erroneous. Rule 52(a), Hawaii Rules of Civil Procedure (1972, as amended).

In the case before us, the court specifically found Olsten to be far more credible than defendant and made the determination that defendant was not confused. We do not find the trial court's determination to be clearly erroneous.

Affirmed.

*Steven Booth Songstad* on the brief, for defendant-appellant.

*Marilyn M. Moniz,* Deputy Prosecuting Attorney, County of Maui, on the brief, for plaintiff-appellee.

