**Eugene JOHNSON, Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

**No. C1–85–284.**

Court of Appeals of Minnesota.

Oct. 22, 1985.

William Kirschner, Kirschner & Baker Legal Clinic, Fargo, N.D., for appellant.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by SEDGWICK, P.J., and LESLIE and NIERENGARTEN, JJ.

## OPINION

LESLIE, Judge.

Appellant contends that his refusal to take a breathalyzer test was based upon reasonable grounds. The trial court disagreed. We affirm.

## FACTS

At about 1:00 a.m., on September 8, 1984, appellant was driving his car through Moorhead when a police officer observed him driving 44-miles-per-hour in a 30-miles-per-hour zone. The officer followed appellant and noticed that his driving was erratic. The officer stopped appellant and noted that he had a strong odor of alcohol, bloodshot eyes, and slurred speech. Appellant performed various field sobriety tests very poorly, and he was placed under arrest and taken to the police station.

The events which transpired at the police station were videorecorded and are part of the record in this case. The tape shows that at 1:23 a.m., the officer read the Minnesota Implied Consent Advisory to appellant. Appellant responded that he understood what had been read to him and that he would submit to a breathalyzer test. Another officer was called in to run the test. While the test was being prepared, the arresting officer asked appellant some routine questions.

At 1:41 a.m., the arresting officer read appellant the *Miranda* warning. Appellant did not seem to understand his *Miranda* rights so the officer read them to him another time. Appellant responded that he wished to have his attorney present before answering any questions. The officer said that was all right, but seconds later told him it was time to take the test.

Appellant stated that he did not understand what was happening, and asked if he could call his attorney. The officers told him he could not. When appellant refused to decide whether to take the test, the testing officer told him that he had ten seconds to decide. The officers then treated appellant's request for an explanation as a refusal to take the test. When appellant told the officers a couple of minutes later that he would take the test after he spoke with his attorney, the officers told him that he had already refused and that he would not be allowed to take the test.

Appellant petitioned for review of his license revocation, and a hearing was held in the district court. Appellant argued that his refusal to take the test was reasonable because the arresting officers confused him by reading him the *Miranda* warning which suggested that he could speak with an attorney. The district court took testimony from the arresting officer, the testing officer, and the appellant, as well as viewing the tape recording of the events at the police station. The court then denied appellant's petition, stating:

[i]t was apparent from the video tape that if the licensee was confused by the

terms of the Implied Consent Advisory and by the Miranda warning concerning his right to counsel, the Court finds that he was confused during the whole video tape presentation and that such confusion arose out of and was due solely to the influence of alcohol and not otherwise.

## ISSUE

Did the trial court err in ruling that appellant's confusion was due solely to his intoxication, and therefore not based upon reasonable grounds?

## DISCUSSION

This case presents a conflict between two lines of cases. The first line of cases holds that persons are excused from refusing to take an alcohol test when they are confused as to their right to an attorney because the police read them the *Miranda* warning after reading the implied consent advisory. The second line of cases holds that persons are not excused from taking an alcohol test because they are too intoxicated to understand what is happening.

Appellant's claim is based on Minn.Stat. § 169.123, subd. 6(3) (1984) and on *State, Department of Highways v. Beckey*, 291 Minn. 483, 192 N.W.2d 441 (1971). Section 169.123, subd. 6(3) states that:

it shall be an affirmative defense for the petitioner to prove that, at the time of the refusal, his refusal to permit the test was based upon reasonable grounds.

Appellant renews his argument that because the police confused him by reading the *Miranda* warning, his refusal was based upon reasonable grounds.

An argument similar to this was effective in *Beckey*. In *Beckey*, defendant was arrested for driving while intoxicated. He was taken to the police station where he was informed of his obligations under the implied-consent statute and was also read his *Miranda* rights. The officers did not distinguish between the implied consent obligations and the *Miranda* rights, and the defendant became confused as to what his rights really were. Because the defendant

did not consent to take the test, his driving privileges were suspended. He appealed his license revocation, and the trial court held that his refusal was based on reasonable grounds. The state appealed.

On appeal, the supreme court affirmed. The court stated:

[w]here the interrogating officer undertakes to repeat Miranda warnings given by the arresting officer at the time of the arrest as well as to inform the person arrested of his rights and obligations under the implied-consent statute without at the same time making clear that his constitutional rights to counsel and to remain silent do not apply to the implied-consent statute, it is not unlikely that confusion will occur * * *.

\*    \*    \*    \*    \*    \*

Where the responses of the arrested person upon being requested to submit to a chemical test indicate that he is asserting a right which he has just been told he is free to assert, it is incumbent upon the officer to make clear that he has no constitutional right to consult an attorney before deciding whether he will submit to a test but merely that, at the time the request is made, he has a right to choose between permitting the test or refusing the test at the risk of revocation of his driver's license.

*Id.* at 487, 192 N.W.2d at 445.

Appellant argues that his situation is identical to that of *Beckey*. He too was read his *Miranda* rights and became confused. He argues that his responses also indicated that he was asserting a right which he had just been told he was free to assert. Therefore, he argues that it was incumbent upon the officer to make clear that he had no constitutional right to consult an attorney before deciding whether to submit to the test. Because the police did not explain the contradictory rules, he argues his revocation should be rescinded.

Respondent argues that the trial court correctly relied on another line of cases, which hold that persons are not excused from refusing to take an alcohol test be-

cause they were too intoxicated to understand their rights and obligations. In *State Department of Highways v. Normandin*, 284 Minn. 24, 169 N.W.2d 222 (1969), the defendant argued that a grossly intoxicated person is not legally competent to consent or refuse to take a chemical test. The Minnesota Supreme Court disagreed, holding that:

a driver of an automobile who refuses to take the required chemical tests is subject to the license suspension provisions of that section, regardless of the degree of his voluntary intoxication or lack of understanding resulting therefrom.

*Id.* at 28, 169 N.W.2d at 224. The rationale behind this ruling was that the defendant's construction of the law would lead to the unintended and absurd result of protecting the extremely intoxicated driver.

The *Normandin* case has been followed and expanded somewhat. In *State, Department of Public Safety v. Hauge*, 286 N.W.2d 727 (Minn.1979), the defendant was injured in an accident after driving while intoxicated. The police obtained a blood sample while he was under medication and incapable of understanding his right to refuse blood-testing. The court held that:

where the driver's physical or mental condition as a result of alcohol consumption or the effects of injury or treatment for injury precludes him from knowingly, voluntarily, or intelligently exercising his statutory choice to refuse submission to such test, his statutorily implied consent remains continuous.

*Id.* at 728. Although *Hauge* is not exactly on point, it does support the theory that persons who are too intoxicated to understand their rights will not be protected by the courts in drunk-driving cases. *See Rude v. Comm'r of Public Safety*, 347 N.W.2d 77 (Minn.Ct.App.1984); *Casci v. Comm'r of Public Safety*, 360 N.W.2d 443 (Minn.Ct.App.1985).

■ Appellant has two additional rules to overcome. First, laws prohibiting a person from driving a motor vehicle while intoxicated are remedial statutes, so they are liberally interpreted in favor of the public interest and against the private interests of the drivers involved. *State, Department Of Public Safety v. Juncewski*, 308 N.W.2d 316, 319 (Minn.1981). Second, whether a driver has reasonable grounds to refuse to be tested is a question of fact for the trial court. *Palbicki v. Comm'r of Public Safety*, 347 N.W.2d 512, 514 (Minn. Ct.App.1984). Even the *Beckey* case, on which appellant bases his appeal, recognized that "[t]he questions of whether a person arrested refused to take the test or had reasonable grounds to do so are questions of fact." *Beckey*, 291 Minn. at 486, 192 N.W.2d at 444–445.

We therefore must determine whether the trial court erred in its factual determination that appellant's confusion was brought about by his intoxication and not by the *Miranda* warning. Generally, this court will not reverse a trial court's findings of fact unless they are clearly erroneous. *See* Minn.R.Civ.P. 52.01. The trial court's findings may be held clearly erroneous if the reviewing court is left with the definite and firm conviction that a mistake was made. *In Re Estate of Balafas*, 293 Minn. 94, 96, 198 N.W.2d 260, 261 (1972).

■ After reviewing the record, this court cannot say that the trial court was clearly erroneous in its determination. Although the tape shows that appellant had no problem answering routine questions, it also shows that he frequently asked the police to repeat questions because he either did not understand the question, could not hear it, or was not paying attention to the question. The tape also shows that appellant did not remember, after only twenty minutes, that the police had read the implied consent advisory and that appellant had agreed to take the test. Finally, he did not understand his *Miranda* rights the first time they were read, and he had to ask numerous questions the second time. This, along with appellant's belligerent behavior in the police station as observed on the tapes, leads us to conclude that the trial court did not err in determining that

appellant's confusion was brought about by his gross intoxication.

## DECISION

Because we find sufficient evidence to support the trial court's findings of fact, we affirm.