Ronald J. JACOB, Petitioner, Appellant,

v.

COMMISSIONER OF PUBLIC SAFETY, Respondent.

No. C4–87–400.

Court of Appeals of Minnesota.

July 28, 1987.

Review Denied Aug. 19, 1987.

Phillip S. Resnick, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Joel Watne, Spec. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by HUSPENI, P.J., and WOZNIAK and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Appellant Ronald J. Jacob was arrested for driving while under the influence. He refused testing under the implied consent law and his license was revoked. Upon petitioning for judicial review, he argued that his refusal was reasonable because he was confused when the officer read the *Miranda* warning before giving the implied consent advisory. He also contended the officer lacked probable cause to arrest him for driving while under the influence. The trial court sustained the revocation, and we affirm.

## FACTS

Shortly after 5:00 p.m. on the evening of November 28, 1986, Trooper Richard Bloom was on routine patrol on Interstate 35 in Carlton County, when he met an eastbound vehicle that he clocked at 91 m.p.h. on his radar unit. The trooper turned and caught up with the vehicle, and then clocked the speed of the car at over 70 m.p.h. He also observed the driver's failure to signal lane changes as he passed other vehicles. The trooper stopped the car, and found appellant was the driver.

Trooper Bloom came into close proximity of appellant when he conferred with him regarding the stop. The trooper detected a strong odor of alcohol. He also observed that appellant's speech appeared to be slurred, and that he had difficulty following instructions and completing a heel-to-toe field sobriety test. The trooper observed appellant sway and believed that his balance was less than normal. Bloom considered that appellant failed the field sobriety test.

The trooper then placed appellant under arrest for driving while under the influence. He read the *Miranda* warning and then filled out the implied consent form. He testified that appellant never appeared to be confused in regard to any explanation of his rights or obligations under either the *Miranda* warning or the implied consent advisory. He testified that when appellant was informed he was under arrest, he told the trooper, "Then I absolutely refuse to cooperate with you."

Appellant testified that the officer read him his rights and asked if he understood them. He told the trooper he did, and that he wanted to talk to his attorney before taking the test. Appellant acknowledged, through his own testimony, that when he told the trooper he wanted to talk to his attorney before deciding about the requested test, the officer explained to him that he did not have that right, and that he could not talk to an attorney before making the

decision to take or not to take the test. Appellant testified that what the officer told him did not appear to be consistent, and it was for that reason he did not take the test. Appellant testified he told the officer he had not had any alcohol, but he had drunk a nonalcoholic beer. He testified that he does not drink alcohol.

The officer brought appellant to the Carlton County Law Enforcement Center where he was videotaped. On videotape, the officer again explained the implied consent advisory to appellant. In response to that advisory, appellant again indicated, "I will not take a test." The trial court, which viewed the videotape, found appellant had further indicated he understood the advisory, never exhibited any confusion or lack of understanding to the officer, and that none was apparent on the videotape. The only reason appellant gave for refusing the test was "because I don't think it's constitutional."

After completing the implied consent advisory, the trooper again explained to appellant his *Miranda* rights. The trial court found appellant acknowledged he understood those rights and did not request to talk with an attorney, nor did he invoke his right to remain silent. The trial court found that instead appellant gave responses that were clear and that he appeared to be lucid.

The trial court specifically found that appellant's refusal to submit to testing did not appear to be due to being misled by the officer or to any confusion, and that the refusal was therefore not based on reasonable grounds. The court concluded the trooper had probable cause to believe appellant was driving while under the influence. It further concluded that the trooper properly informed appellant of his implied consent rights and of the consequences of refusal to submit to testing. The court explicitly found appellant's refusal was not based upon reasonable grounds. The court sustained the revocation, and Jacob appeals.

## ISSUES

1. Did the police officer have probable cause to believe appellant had been driving while under the influence of alcohol?

2. Was appellant's refusal to submit to testing reasonable because he was confused by the reading of the *Miranda* rights in conjunction with the implied consent advisory?

## ANALYSIS

■ 1. Appellant argues that the trooper did not have probable cause to believe he had been driving while under the influence of alcohol. *See* Minn.Stat. §§ 169.121, subd. 1(a) and 169.123, subd. 2(a) (1986). The trooper testified, and the trial court found, that the trooper observed the strong odor of alcohol, slurred speech, difficulty in following instructions and completing a heel-to-toe field sobriety test (which the trooper considered appellant failed), swaying, and balance that was "less than normal." The trooper also observed traffic violations. The trial court did not err in determining that the officer had probable cause to believe appellant had been driving while under the influence.

■ 2. Appellant refused to submit to testing and his driver's license was revoked for one year. Minn.Stat. § 169.123, subd. 4 (1986). A driver may assert as an affirmative defense that his refusal was based upon reasonable grounds. *Id.* subd. 6. Whether a person had reasonable grounds to refuse testing is a question of fact. *State, Department of Highways v. Beckey*, 291 Minn. 483, 486, 192 N.W.2d 441, 444–45 (1971).

In *Beckey*, the court addressed an issue of whether a refusal was justified due to the driver's confusion about the right to consult with counsel:

Where the interrogating officer undertakes to repeat Miranda warnings given by the arresting officer at the time of the arrest as well as to inform the person arrested of his rights and obligations under the implied-consent statute without at the same time making clear that his constitutional rights to counsel and to remain silent do not apply to the implied-consent statute, it is not unlikely that

confusion will occur, resulting in the arrested person's being misled into believing that he may remain silent and that he is being offered the option to postpone his decision and the chemical test until he can consult an attorney. Where the responses of the arrested person upon being requested to submit to a chemical test indicate that he is asserting a right which he has just been told he is free to assert, it is incumbent upon the officer to make clear that he has no constitutional right to consult an attorney before deciding whether he will submit to a test but merely that, at the time the request is made, he has a right to choose between permitting the test or refusing the test at the risk of revocation of his driver's license.

*Id.* at 487, 192 N.W.2d at 445. In a subsequent case, the supreme court noted that prior cases addressing the issue:

do not stand for the proposition that the reading of the Miranda warning and implied-consent warning create reasonable grounds for refusing testing as a matter of law. Rather, we there clearly indicated that there were fact questions to be determined in each case.

*State, Department of Public Safety v. Stavaas,* 303 Minn. 371, 374, 227 N.W.2d 819, 821 (1975) (citation omitted). More recent cases note that the *Miranda* warning should not be given prior to the implied consent advisory, because of the danger that the driver will be confused, and will mistakenly believe that there is a right to consult with counsel prior to deciding whether to take a test pursuant to the implied consent law. *Nyflot v. Commissioner of Public Safety,* 369 N.W.2d 512, 516 (Minn.1985); *State v. Gross,* 335 N.W.2d 509, 510 (Minn.1983). In *Butler v. Commissioner of Public Safety,* 348 N.W.2d 827 (Minn.Ct.App.1984), this court noted:

Giving a *Miranda* warning, which implies there are no penalties for refusing to cooperate, in an implied consent situation, where there are substantial penalties for refusing to cooperate, is confusing to the driver. It can be so confusing that he would have reasonable grounds to refuse the test.

*Id.* at 828 (citation omitted.)

Appellant urges this court to hold that there is confusion per se when a *Miranda* warning is given in conjunction with the implied consent advisory and when there is no evidence presented that the officer disavowed the applicability of the *Miranda* warning to the implied consent advisory. He cites *Wright v. Arkansas,* 288 Ark. 209, 703 S.W.2d 850 (1986), in which the Arkansas Supreme Court addressed this issue and held:

We think the better reasoned approach is that if a Miranda warning is given in connection with an explanation of the implied consent law, the police officers must explicitly inform the suspect that the Miranda rights are not applicable to the decision of whether or not to take the test.

*Id.* at 212, 703 S.W.2d at 851 (citations omitted).

Appellant's argument, supported by the approach of the Arkansas court, is a rational extension of prior Minnesota decisions. Police officers have been discouraged from giving the *Miranda* warning prior to the implied consent advisory. *Nyflot,* 369 N.W.2d at 516. The present approach, determining the issue as a matter of fact, inevitably produces litigation. It is problematic in part because courts are required to examine the issue of confusion in circumstances that are inherently confusing because the driver is often under the influence. *Johnson v. Commissioner of Public Safety,* 375 N.W.2d 99, 101–03 (Minn.Ct. App.1985).

Appellant's arguments prompt consideration of a new rule of law, as follows: If the police officer gives the *Miranda* warning prior to reading the implied consent advisory, he or she must disavow the applicability of the *Miranda* advice on constitutional rights to the implied consent advisory, instead of merely telling the driver that he cannot consult with counsel on the decision of whether or not to take the test. If the officer did so, there would be no confusion as a matter of law on the constitutional

right to counsel, and refusal based on an allegation of this confusion would not be reasonable. If the officer did not disavow the applicability of the *Miranda* warning to the implied consent advisory, a driver's refusal would be per se reasonable, and confusion would be found to exist as a matter of law. Adopting such a rule of law would permit communication of the topic with the same certainty involved in communicating on other topics covered by the standard advisory form.

We conclude that it is not our prerogative to announce a new requirement as a matter of law. Instead, the task of reviewing the content of the law falls upon the legislature or the supreme court. As the law stands today, it remains true that the reasonableness of a refusal is a question of fact, and we must defer to the findings of the trial court that are sustained by the evidence. *Frost v. Commissioner of Public Safety,* 401 N.W.2d 454, 456 (Minn.Ct. App.1987); *Johnson,* 375 N.W.2d at 102.

 Under current law, the trial court properly considered the testimony of the officer and the driver. It based its factual determination on conflicting testimony and concluded that appellant failed to meet his burden of proving that his refusal was reasonable. This determination is not clearly erroneous. *Beckey,* 291 Minn. 483, 486–87, 192 N.W.2d 441, 444–45 (1971).

### DECISION

Affirmed.