Ronald Dean NORMAN, Appellant,

v.

COMMISSIONER OF PUBLIC
SAFETY, Respondent.

No. C6–87–995.

Court of Appeals of Minnesota.

Sept. 15, 1987.

Robert W. Owens, Jr., Heuer & Associates, Butler North, Minneapolis, for appellant.

Hubert H. Humphrey, III, State Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by POPOVICH, C.J., and FOLEY and HUSPENI, JJ.

## OPINION

FOLEY, Judge.

Appellant Ronald Dean Norman was arrested for driving while under the influence. He refused testing and his license was revoked pursuant to the implied consent law. He petitioned for judicial review, contending that his refusal was reasonable because he was confused about his rights. The trial court determined the refusal was not reasonable, and the revocation was sustained. Norman appeals.

## FACTS

On January 22, 1987, at approximately 11:45 p.m., Wayzata Police Officer Holly A. Lasee was driving a marked squad car in the 100 block of Gleason Lake Road in Wayzata. Lasee observed a vehicle, later identified as being driven by appellant, making a U-turn where a sign is posted prohibiting U-turns. Lasee stopped appellant's vehicle.

Appellant identified himself with a Minnesota picture driver's license. Officer Lasee ran a computer check on appellant's license, and was informed his license was not valid. Appellant told Lasee he believed his license was valid. It was later confirmed that appellant's license was valid, even though he had recently applied for a North Dakota driver's license, because the North Dakota license had not yet been issued.

While talking with appellant, Lasee observed that appellant's eyes were watery and glassy, and that his breath had the odor of an alcoholic beverage. Shortly after Lasee stopped appellant, Wayzata Police Officer Michael A. Bennett arrived on the scene to assist Officer Lasee. He asked appellant to submit to a preliminary breath test. Appellant agreed to take it,

and the test result indicated a "fail." Lasee arrested appellant for driving while under the influence and transported him to the Wayzata Police Station.

At the police station, Lasee read the implied consent advisory to appellant. The trial court found that when asked whether he understood the advisory, appellant replied that he did, but that he did not understand why the officer thought his license was invalid. When asked whether he would submit to a breath test, appellant replied he would not. When asked why he refused testing, appellant replied, "I don't want to."

Appellant testified that he refused testing because he was confused about his rights. He testified that Lasee had told him that he had nothing to lose by taking the test because he did not have a valid Minnesota driver's license, and Lasee had encouraged him to take the test. He testified that he decided not to take the test because he thought if he did not have a valid driver's license, it could not be revoked.

The trial court found that Lasee read to appellant only the language printed on the implied consent form. At no time did Officer Lasee attempt to explain or elaborate on the language of the form; at no time during or after the reading did appellant inform Lasee that he was confused about his rights.

The referee concluded that appellant failed to demonstrate that he had reasonable grounds to refuse to submit to testing. Appellant's mistaken belief that his driver's license was not valid did not constitute a reasonable ground for refusal, whether or not such a mistaken belief was induced by the police officer. The trial court ordered that the revocation be sustained. Norman appeals.

## ISSUE

Did the trial court err in concluding that appellant failed to demonstrate that his refusal to submit to testing was reasonable?

## ANALYSIS

Appellant's driver's license was revoked for refusing testing pursuant to the implied consent law. Minn.Stat. § 169.123, subd. 4 (1986). A petitioner in an implied consent proceeding may assert, as an affirmative defense, that the refusal to take the alcohol concentration test was reasonable. Minn. Stat. § 169.123, subd. 6 (1986). A refusal may be reasonable if the police have misled a driver into believing a refusal was reasonable, or if the police have made no attempt to explain to a confused driver his obligations. *State, Department of Public Safety v. Lauzon,* 302 Minn. 276, 277, 224 N.W.2d 156, 157 (1974). Whether a refusal is reasonable is a question of fact for the trial court, and this finding will be reversed only if clearly erroneous. *State, Department of Highways v. Beckey,* 291 Minn. 483, 486–87, 192 N.W.2d 441, 444–45 (1971); *Frost v. Commissioner of Public Safety,* 401 N.W.2d 454, 456 (Minn.Ct.App.1987).

Appellant asserts that his refusal here was reasonable because he was confused when the officers told him he did not have a valid driver's license, and that if he refused to take the test, his driving privileges would be revoked. He came to the conclusion that one cannot lose what one does not have. He asserts that just as in *Beckey,* where a petitioner's refusal was reasonable because the police had given the petitioner confusing and misleading information as to his rights, 291 Minn. at 487, 192 N.W.2d at 445, so too his refusal was reasonable here because he was misinformed about the status of his driver's license, and therefore confused as to his rights under the implied consent law.

■ Initially, we will address appellant's belief that without a driver's license, he had no driving privileges to lose. The implied consent law provides that at the time a test is requested, the person shall be informed that if testing is refused, the person's right to drive will be revoked for a minimum period of one year. Minn.Stat. § 169.123, subd. 2(b)(2) (1986). Subdivision 4 provides that upon certification by the peace officer that there was probable cause to believe the person was driving while

under the influence, and that the person refused to submit to a test,

the commissioner of public safety shall revoke the person's license or permit to drive, or nonresident operating privilege, for a period of one year.

\* \* \* \* \* \*

If the person is a resident without a license or permit to operate a motor vehicle in this state, the commissioner of public safety shall deny to the person the issuance of a license or permit for the same period after the date of the alleged violation as provided herein for revocation, subject to review as hereinafter provided.

Minn.Stat. § 169.123, subd. 4 (1986). Thus, even if appellant's driver's license was not valid, the advice that refusal to submit to testing can result in the loss of driving privileges for one year is accurate. The officer's mistaken belief that appellant's driver's license was not valid did not change the accuracy of the advice which appellant received.

In addition, there was a dispute of fact as to the conversation between appellant and the officer relating to testing. The trial court resolved this factual determination against the appellant and this finding is not clearly erroneous. The trial court also found that appellant did not inform the officer that he was confused as to his rights. The officer consequently had no reason to clear up appellant's alleged confusion as to his obligation to take the test. *Cf. Frost,* 401 N.W.2d at 456.

### DECISION

The order of the trial court sustaining the revocation is affirmed.

Affirmed.