*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1592**

Jason Lee Morzenti, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed August 18, 2014
Affirmed
Chutich, Judge**

Washington County District Court
File No. 82-CV-12-3000

Paul P. Sarratori, Mesenbourg & Sarratori Law Offices, P.A., Coon Rapids, Minnesota (for appellant)

Lori Swanson, Attorney General, Jacob Fischmann, Assistant Attorney General, Joseph M. Simmer, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Chutich, Presiding Judge; Johnson, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CHUTICH**, Judge

Appellant Jason Morzenti challenges the district court's order sustaining revocation of his driver's license, contending that he did not refuse to take a chemical test, that any refusal was reasonable, and that the implied-consent statute is coercive.

Because the district court properly found that Morzenti refused and that his refusal was unreasonable, and because the implied-consent statute is not coercive, we affirm.

## FACTS

On May 5, 2012, at about 8:40 a.m., Trooper Steven Dauffenbach pulled over a car that he believed was speeding on Interstate 94 in Woodbury. Trooper Dauffenbach identified the driver of the car as Morzenti. The trooper arrested Morzenti for suspected driving while intoxicated and brought him to the Washington County Jail.[1]

At the jail, Trooper Dauffenbach read the implied-consent advisory to Morzenti and asked Morzenti if he understood. Morzenti responded, "No, sir." Trooper Dauffenbach then read the implied-consent advisory again, after which Morzenti responded that he understood. Morzenti stated that he wanted to contact an attorney, and he did so.

The trooper then asked Morzenti if he would take a chemical test, and Morzenti responded affirmatively. Before the Intoxilyzer was ready to receive a breath sample, Trooper Dauffenbach explained twice to Morzenti how to give a proper breath sample.

When the Intoxilyzer began its three-minute cycle during which it could receive a breath sample, the trooper instructed Morzenti to stand up, "wrap [his] lips" around the mouthpiece, and blow until the trooper told him to stop. Morzenti "just stood there" and did not provide a sample. The trooper repeated the instructions at least eight times and cautioned Morzenti that only a short period of time remained in which to give the breath

---

[1] Because the stop and arrest were not at issue, the parties did not develop the record at the implied-consent hearing.

sample and that if he did not blow into the machine, it would be considered a refusal to take the test.

At some point during the three-minute cycle, Morzenti stated that he did not understand. In response, the trooper again stated what Morzenti needed to do: take a deep breath, "wrap [his] lips" around the mouthpiece, and blow into the tube. The trooper also stated, "You're not confused, you're playing games." According to the trooper, Morzenti did not attempt to "blow into the machine, to lean over or even go for the mouthpiece. He just stood there straight up and down, staring straight ahead." After three minutes, the Intoxilyzer timed out. Trooper Dauffenbach considered Morzenti's actions to be a test refusal.

Morzenti was served with a notice and order of revocation of his driver's license. Morzenti petitioned the district court for judicial review of the commissioner's revocation.

At the implied-consent hearing, Trooper Dauffenbach testified on behalf of the commissioner. An audio recording of the May 5, 2012 interview was admitted into evidence. Morzenti, who is a licensed teacher and has a master's degree, testified on his own behalf.

Morzenti testified that he did not blow into the mouthpiece for the Intoxilyzer "[b]ecause the tube wasn't by my mouth and I didn't want to grab the tube from the officer because that's aggressive." He testified that after he told the trooper that he did not understand, the trooper told him that he "did understand" and that he "was playing games," and then the trooper "repeated the instructions to blow into the tube." Morzenti

3

did not say anything further to the trooper because he "wished to be cooperative and polite." He acknowledged that the trooper asked him to "blow into the machine," but Morzenti did not do so because he "would have had to reach across the desk and pull the tube out of the officer's hand."

The district court issued an order sustaining the commissioner's decision to revoke Morzenti's driving privileges. The district court held that Morzenti's "conduct constituted test refusal," finding Morzenti's explanation for not taking the test implausible. The district court also held that the implied-consent law is constitutional.

This appeal followed. We stayed the appeal pending the outcome of *State v. Brooks*, 838 N.W.2d 563 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). In January 2014, the stay was dissolved.

## D E C I S I O N

A law-enforcement officer may request that a driver submit to a chemical test of the person's blood, breath, or urine, if the officer has "probable cause to believe the person was driving, operating, or in physical control of a motor vehicle" while impaired. Minn. Stat. § 169A.51, subd. 1(b) (2012). If a driver refuses to permit a test, "then a test must not be given." Minn. Stat. § 169A.52, subd. 1 (2012). A driver's refusal to submit to testing results in revocation of the person's driver's license for one year. *Id.*, subd. 3(a) (2012). "It is an affirmative defense for the petitioner to prove that, at the time of the refusal, the petitioner's refusal to permit the test was based upon reasonable grounds." Minn. Stat. § 169A.53, subd. 3(c) (2012).

4

Whether a driver has refused to submit to a chemical test and whether that refusal is reasonable are questions of fact that we review for clear error. *Lynch v. Comm'r of Pub. Safety,* 498 N.W.2d 37, 38–39 (Minn. App. 1993); *Norman v. Comm'r of Pub. Safety*, 412 N.W.2d 22, 23 (Minn. App. 1987). "Conclusions of law may be reversed if the district court erroneously construed the law." *Busch v. Comm'r of Pub. Safety*, 614 N.W.2d 256, 258 (Minn. App. 2000).

## I.        Whether Morzenti Refused Test

Morzenti asserts that no proof of a refusal exists. "A driver may communicate refusal to take a test by either words or acts," and a driver's "failure to comply reasonably with the administration of the test can constitute a refusal." *Gabrick v. Comm'r of Pub. Safety*, 393 N.W.2d 23, 25 (Minn. App. 1986) (quotations omitted). If a driver's actions frustrate the testing process, the driver's conduct will amount to a test refusal. *Busch*, 614 N.W.2d at 259; *see Connolly v. Comm'r of Pub. Safety*, 373 N.W.2d 352, 354 (Minn. App. 1985) (affirming district court's finding that driver refused testing where driver blew around the mouthpiece of the machine and did not provide an adequate breath sample); *see also* Minn. Stat. § 169A.51, subd. 5(c) (2012) ("[F]ailure of a person to provide two separate, adequate breath samples in the proper sequence constitutes a refusal.").

The evidence sufficiently supports the district court's factual finding that Morzenti refused to submit to the breath test. While Morzenti initially agreed to take the breath test, he did not actually provide a breath sample by blowing into the mouthpiece. Even though he did not verbally refuse the test, his actions are deemed a refusal. The trooper

5

explained to him several times how to take the test, but Morzenti did not move his mouth toward the mouthpiece or even reach for it. The trooper told Morzenti more than once that if he did not take the test, it would count as a refusal. Morzenti did not make any movement toward the mouthpiece, and the Intoxilyzer timed out after three minutes.

Morzenti's actions (or lack thereof) frustrated the testing process and amount to a test refusal. "An officer is not required to wait for the driver to decide at his convenience whether or not he will submit to testing." *Gabrick*, 393 N.W.2d at 25. The district court correctly found that Morzenti refused to submit to the test.

## II.    Whether Refusal Was Reasonable

Morzenti contends that, even if he did refuse to submit to a test, his refusal was reasonable "based upon [his] expressed confusion." A driver's confusion may be a reasonable basis for refusal. *State, Dep't of Highways v. Beckey*, 291 Minn. 483, 485–87, 192 N.W.2d 441, 444–45 (1971) (holding appellant's refusal reasonable where officer's explanation of appellant's rights was confusing and misleading). Refusal "may be reasonable if the police have misled a driver into believing a refusal was reasonable or if the police have made no attempt to explain to a confused driver his obligations." *Frost v. Comm'r of Pub. Safety*, 401 N.W.2d 454, 456 (Minn. App. 1987) (holding refusal reasonable based on driver's confusion as to whether he had a right to have a personal doctor present and officer's failure to inform driver that his statements would be considered a refusal).

The district court found that Morzenti's refusal was not based on reasonable grounds because he was not actually confused about the testing and because his

6

explanation that he did not want to be perceived as aggressive was not plausible. These findings are supported by the record. Although Morzenti told the trooper that he was confused, the trooper clearly explained the directions many times; Morzenti did not ask questions or try to dispel his purported confusion. The district court did not accept as credible Morzenti's claimed belief that it would be "aggressive" to take the mouthpiece from the trooper.

Contrary to Morzenti's assertion, the trooper *did* take time to explain what Morzenti needed to do to take the test. In fact, the district court found that the trooper explained the process at least eight times. Other than claiming that it would be aggressive to take the mouthpiece from the trooper—a claim that the district court found incredible—Morzenti does not explain how he was confused or why simply stating that he was confused should be deemed reasonable grounds for refusing the test. *See Maietta v. Comm'r of Pub. Safety*, 663 N.W.2d 595, 598–99 (Minn. App. 2003) (holding that caselaw "does not impose an affirmative duty on the part of the police officer to clear up any and all confusion on the part of a driver"), *review denied* (Minn. Aug. 19, 2003).

### III. Coercion

Morzenti finally argues that the implied-consent statute is coercive because it "threatens" criminal penalties if a driver refuses to submit to testing.[2] We disagree.

---

[2] Minnesota's implied-consent statute requires that police officers tell drivers who are suspected of driving while impaired that "Minnesota law requires [he or she] to take a test" to determine whether they are "under the influence of alcohol," that "refusal to take a test is a crime," and that he or she has the right to talk to an attorney, but this right is "limited to the extent that it cannot unreasonably delay administration of the test." Minn. Stat. § 169A.51, subds. 1, 2 (2012).

7

Under the Minnesota Supreme Court's decision in *State v. Brooks*, "a driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." 838 N.W.2d at 570. And in *McDonnell v. Commissioner of Public Safety*, our supreme court stated that "[t]he fact that certain individuals may face criminal charges for refusing to undergo testing in no way compels those individuals to refuse." 473 N.W.2d 848, 855–56 (Minn. 1991). Therefore, Morzenti's argument is unpersuasive.

**Affirmed.**